**Michael B. COTTER, Plaintiff,**

v.

**Henry HELMER, in his individual capacity only; Local 1–2, Utility Workers Union of America, AFL–CIO; and James Dugard, in his individual capacity only, Defendants.**

**No. 88 Civ. 5710 (PKL).**

United States District Court,
S.D. New York.

Aug. 22, 1988.

---

Arthur Schwartz, Clifton & Schwartz, New York City, for plaintiff.

Kevin G. Jenkins, Law Offices of Kevin G. Jenkins, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

This dispute pits the plaintiff, the Assistant Business Manager of the defendant union ("Local 1–2"), against the union, its current Business Manager, defendant Henry Helmer, and its Executive Board's Chairman, defendant James Dugard. The plaintiff admits that since 1965 he has aligned himself with various political groupings within Local 1–2 which have opposed a group who allegedly have controlled the governance of the union from that time. Due to events which will be discussed, Local 1–2 is going to present to the membership at its September meeting a proposal that the plaintiff be removed from office. The action is before the court on plaintiff's motion, pursuant to Fed.R.Civ.P. 65, for a preliminary mandatory injunction directing the union to make its membership mailing list available to the plaintiff, so that the plaintiff may distribute literature to the membership regarding 1) the removal vote; and 2) the plaintiff's candidacy for the position of Assistant Business Manager, in an election scheduled for March,

1989. On August 19, 1988, the court heard argument from the parties. The relevant facts are not in dispute. This Memorandum Opinion and Order constitutes the court's findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52.

## FINDINGS OF FACT

1. On July 27, 1988, 32 members of Local 1-2's Executive Board heard charges of "malfeasance in office" against the plaintiff. *See* Verified Complaint at paras. 18, 23. The proceeding, including the taking of testimony, lasted approximately six and three-quarters hours, with occasional recesses. *See* Affidavit of Henry J. Helmer, executed Aug. 17, 1988, at para. 9.

2. The Executive Board voted 31-1 to convict the plaintiff of the charges. *See* Affidavit of Michael B. Cotter at para. 27.

3. Under the terms of the National Constitution of the Utility Workers Union of America, the Executive Board's vote can become effective only on approval of a majority vote of the membership present at a local membership meeting. *See* Ex. A to Affidavit of James Joy, Jr. at Art. XIV § 4. "At the meeting of the Local Union the accused shall be accorded full opportunity to present his position on all matters bearing upon his trial and the report of the Trial Committee." *Id.*

4. Local 1-2 has a membership of approximately 14,000, working at over 100 locations. *See* Cotter Aff. at para. 35 & Ex. O.

5. The membership vote on whether to remove the plaintiff from office is scheduled for the September membership meeting, tentatively scheduled for September 20, 1988. *See id.* at para. 38.

6. On or about August 4, 1988, Local 1-2 distributed a leaflet, on union stationery, containing the large, bold heading "Justice," and signed by the defendant Helmer, advising members that the plaintiff had been found "GUILTY OF MALFEASANCE OF OFFICE" and advising them that the determination of the Trial Committee would be presented to the September membership meeting for ratification. *See* Ex. N to Cotter Aff.

7. Although the plaintiff has, through the assistance of sympathetic union members, distributed information presenting his side of the charges against him to union members at some locations, *see* Cotter Aff. at para. 35; Affidavit of Pat Bencivengo, executed Aug. 17, 1988, at paras. 3-6 & Ex. A, this method of distribution will not afford the plaintiff the opportunity to present his case to all 14,000 members.

8. It will take two to three weeks for the plaintiff to complete a mailing to the membership of Local 1-2. *See* Cotter Aff. at para. 38.

9. Local 1-2 has scheduled regular elections for union office for March, 1989. *See* Cotter Aff. at para. 36. The process begins with the election of an Election Board in November 1988. *See id.* No member of the Election Board can be a nominee for office. *See* Local 1-2 By-Laws, Ex. A to Affidavit of Eugene T. Briody, executed Aug. 17, 1988, at Art. VII, § 2. The Election Board is responsible for placing all qualified nominees on the ballot. No write-in votes are permitted. *See id.* at Art. VII, § 4.

10. On August 1, 1988, the plaintiff wrote Local 1-2's Secretary-Treasurer Antonio Sanchez to advise the union of his candidacy for the office of Assistant Business Manager in the March 1989 election. The plaintiff requested access to the union's mailing list to disseminate campaign literature. *See* Cotter Aff. at para. 37 & Ex. P.

## CONCLUSIONS OF LAW

### A. Subject Matter Jurisdiction

Local 1-2 questions whether subject matter jurisdiction exists. This must be addressed before the court can consider whether injunctive relief is appropriate. *Cf. Visual Sciences, Inc. v. Integrated Communications Inc.*, 660 F.2d 56, 59 (2d Cir.1981) ("A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him.").

### 1. The September Removal Vote

Subject matter jurisdiction concerning plaintiff's seventh cause of action, seeking an injunction requiring the union to allow him the use of the union mailing list for the purpose of disseminating information relevant to the September removal vote, is invoked pursuant to section 102 of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), codified at 29 U.S.C. section 412 (1982). That section vests federal district courts with jurisdiction over any claim of infringement of rights secured by 29 U.S.C. sections 411–415 (1982), known collectively as the "Bill of Rights of Members of Labor Organizations." Plaintiff alleges the union is infringing his right of free speech, secured by section 411(a)(2), by denying him the opportunity to present his position regarding the removal proceedings, that the union's actions against him are politically motivated, to the membership, by denying him access to the union mailing list.

The union contends that section 411(a)(2) "speaks exclusively to the conduct of union meetings. It in no way governs a union member's or officer's right to access a mailing list of the membership to disseminate literature *prior to* a meeting." Memorandum in Opposition to Request For Preliminary Injunction at 21 (emphasis in original).

■ The court disagrees. The caselaw is clear that section 411(a)(2) guarantees union members the right of free speech both inside and outside union meetings. *See, e.g., Grant v. Chicago Truck Drivers,* 806 F.2d 114, 117 (7th Cir.1986); *Fulton Lodge No. 2 v. Nix,* 415 F.2d 212, 218 & n. 15 (5th Cir.1969); *Yanity v. Benware,* 376 F.2d 197, 200 (2d Cir.), *cert. denied,* 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158 (1967); *Ballas v. McKiernan,* 41 A.D.2d 131, 135, 137–38, 341 N.Y.S.2d 520, 524, 526–27 (2d Dep't 1973), *aff'd,* 35 N.Y.2d 14, 358 N.Y.S.2d 695, 315 N.E.2d 758, *cert.*

*denied,* 419 U.S. 1034, 95 S.Ct. 517, 42 L.Ed.2d 309 (1974); *see also* 105 Cong.Rec. 6021 (daily ed. Apr. 25, 1959), *reprinted in* 2 N.L.R.B. Legislative History of the Labor–Management Reporting and Disclosure Act of 1959, at 1230 (Senators McClellan and Kuchel agreeing that one purpose of section 411(a)(2) "is to make certain that union members shall have freedom of speech not only in a union hall, but outside"). The case cited by the union, *Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), is inapposite. In that case, the Court held only that disputes concerning eligibility of candidates for union office are governed by Title IV of the LMRDA, not Title I. *See Calhoon,* 379 U.S. at 138–41, 85 S.Ct. at 295–97; *Bunz v. Moving Mach. Operators' Protective Union Local 224,* 567 F.2d 1117, 1123 (D.C. Cir.1977).

■ Under subsection 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2) (1982), enforceable pursuant to section 102, 29 U.S.C. § 412 (1982), subject matter jurisdiction exists over the plaintiff's seventh cause of action.

### 2. The March Election

■ The plaintiff asserts that subject matter jurisdiction exists over his eighth cause of action, seeking an injunction requiring the union to allow him to use the union's mailing list to disseminate literature regarding the upcoming elections for union office, pursuant to 29 U.S.C. section 481(c) (1982). That section creates a duty in the union to comply with all reasonable requests made by bona fide candidates for union offices "to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of" the union. *See id.*[1]

The union argues that the plaintiff is not a bona fide candidate for union office, and

---

**1.** Parenthetically, the court notes that section 481(c) is an exception to the general prohibition against enforcement by individuals, by bringing lawsuits, of rights secured by Title IV of the LMRDA, codified at 29 U.S.C. §§ 481–483 (1982). *See Local No. 82, Furniture & Piano*

*Moving v. Crowley,* 467 U.S. 526, 540 & n. 15, 104 S.Ct. 2557, 2565 & n. 15, 81 L.Ed.2d 457 (1984); *Calhoon v. Harvey,* 379 U.S. 134, 140 & n. 13, 85 S.Ct. 292, 296 & n. 13, 13 L.Ed.2d 190 (1964).

cannot become a bona fide candidate unless and until nominated from the floor at the nomination meeting, to be held either at the February membership meeting or at a special meeting to be held at least 45 days prior to the election. *See* Memorandum in Opposition at 22. The union cites 29 U.S.C. section 483, which provides in substance that a union is entitled to conduct elections in the manner it chooses, except as provided by title 29 of the United States Code. *See id.*

■ The plaintiff argues that he is currently a bona fide candidate for office. Plaintiff cites *Yablonski v. United Mine Workers*, 71 L.R.R.M. (BNA) 2606 (D.D.C. 1969). In *Yablonski*, the court concluded that the plaintiff was a bona fide candidate for national union office, despite the fact he had not been nominated by fifty local unions. *See id.* It sufficed that Yablonski was "actively seeking both nomination and election.... There would be no warrant for limiting the plain meaning of the word [sic] 'bona fide candidate' in a statute intended to protect union democracy." *Id.* Plaintiff also cites a regulation in the Code of Federal Regulations, promulgated to conform to the holding of *Yablonski*, that states that a person does not need to be formally nominated in order to be a bona fide candidate. *See* 29 C.F.R. § 452.80 (1987). "A union may reasonably require that a person be nominated in order to be elected, but may not prevent a member who actively seeks office and is otherwise qualified from taking advantage of the campaign safeguards in the [LMRDA] in an effort to gain the support necessary to be nominated." *Id.*[2]

The court agrees with the plaintiff that he is a bona fide candidate for office. Thus, subject matter jurisdiction exists over his eighth cause of action.

**B. Preliminary Injunction**

■ To merit the entry of a preliminary injunction, the plaintiff must demonstrate:

(1) irreparable harm and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in [his] favor.

*Baker's Aid v. Hussman Foodservice Co.*, 830 F.2d 13, 15 (2d Cir.1987) (per curiam).

[T]he loss of rights of union members to full and equal participation in the affairs of a union is the type of injury which the courts have historically prevented through the issuance of preliminary injunctions.

*Fight Back Comm. v. Gallagher*, 115 L.R. R.M. (BNA) 2685, 2687 (S.D.N.Y.1983); *see Navarro v. Gannon*, 385 F.2d 512, 515–16, 521 (2d Cir.1967), *cert. denied*, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968).

**1. The September Removal Vote**

The principle behind the LMRDA is "full and active participation by the rank and file in the affairs of the union." *Navarro v. Gannon*, 385 F.2d at 518 (quoting *American Fed'n of Musicians v. Wittstein*, 379 U.S. 171, 182–83, 85 S.Ct. 300, 306–07, 13 L.Ed.2d 214 (1964)), *quoted in Sheldon v. O'Callaghan*, 497 F.2d 1276, 1281 (2d Cir. 1974). "The majority rule concept is at the center of our federal labor policy.... A fair referendum ... include[s] the right of members whose views [a]re opposed to [the union's] to have an opportunity to present their views to other members of the union." *Sheldon*, 497 F.2d at 1282.

The union's contentions that 1) the plaintiff has had the opportunity to personally distribute literature concerning the removal proceedings, and 2) the plaintiff will have an adequate opportunity to present his case at the meeting itself, are without merit. In the first place, mailing to each member is the least intrusive, yet positively effective way for the plaintiff to make his

---

**2.** Although administrative regulations are not binding on the court, they may be considered as an aid in determining congressional intent behind the statute, and are entitled to deference to the extent that they are consistent with the policies and purposes of the LMRDA. *See Brock v.*

*Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1357 (9th Cir.1985); *Usery v. Local Div. 1205, Amalgamated Transit Union*, 545 F.2d 1300, 1304 (1st Cir.1976); *Marshall v. Local Lodge, 1784, Int'l Ass'n of Machinists & Aerospace Workers*, 509 F.Supp. 90, 95 (D.Md.1981).

case known to the entire membership. In the second place,

> there is no reason why members should be denied the opportunity to mail their views as often as they wish and at the times they wish. Since the concept of majority rule is at the center of federal labor policy, it is imperative that the lines of communication among the membership be as unfettered as reason can make them. Union officials bear a heavy burden of justification for any actions which unnecessarily restrain the ability of the members to discuss matters on which they are to vote.

*Blanchard v. Johnson*, 388 F.Supp. 208, 216 (N.D.Ohio 1975) (citation omitted), *modified on other grounds*, 532 F.2d 1074 (6th Cir.), *cert. denied*, 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976). Granted, subsection 411(a)(2)'s scope is "limited by a general rule of reason." *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 111 n. 4, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982). This court must evaluate the reasonableness of the union's offered justifications for denying the plaintiff access to the membership mailing list. *See id.* (when it enacted the LMRDA, Congress "indicated that the courts are to play a role in the determination of reasonableness"). The union's conduct here is unreasonable. In the third place, even if under normal circumstances the union might be justified in its position, a proposition the court does not accept, in this case the plaintiff must have the opportunity to speak. The distribution on or about August 4 of the leaflet entitled "Justice," on union stationery, under the signature of the business manager, defendant Helmer, requires equity's intervention. The union has attempted by the leaflet to prejudice the membership against the plaintiff. He must be afforded the opportunity to minimize the leaflet's prejudicial impact.

The union also argues that the plaintiff's free speech rights do not attach to the removal proceedings because the LMRDA protects union members' rights as members, but not as union officials. The union cites *Finnegan v. Leu*, 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). *Finne-gan* stands only for the proposition that an elected union leader who has plenary authority under union by-laws to choose confidential, policymaking union employees "who will be instrumental in evolving [his] administrative policies," *see id.* at 442–43, 102 S.Ct. at 1873–74 (Blackmun, J., concurring), is not restricted by Title I in choosing "a staff whose views are compatible with his own." *See id.* at 434, 441 & n. 11, 102 S.Ct. at 1869, 1873 & n. 11. The case is inapposite here. The matter of the plaintiff's removal must, according to Local 1–2's By–Laws, be approved by majority vote of the membership. Because a vote is required, the plaintiff's right to state his case must be preserved. "[I]t is the duty of the union leadership ... to see that the lines of communication and dissemination of views and opinions are kept open and working, especially as to matters on which members will be asked to vote." *Blanchard*, 388 F.Supp. at 214.

### 2. The March Election

The court has already determined that the plaintiff is a bona fide candidate for union office. *See* discussion *supra* at 316–17. He is entitled to disseminate campaign literature. The freedom of speech provision of subsection 411(a)(2) "is particularly critical, and deserves vigorous protection, in the context of election campaigns." *United Steelworkers of Am.*, 457 U.S. at 112, 102 S.Ct. at 2346. However, as the plaintiff concedes, the union is correct in that the plaintiff has no right under 29 U.S.C. section 481(c) to inspect the union's mailing list at this time. *See N.L.R.B. v. Carpenters Local 608*, 811 F.2d 149, 153–54 (2d Cir.) (recognizing distinction between mail and inspection rights under section 481(c)), *cert. denied*, —— U.S. ——, 108 S.Ct. 72, 98 L.Ed.2d 36 (1987).

### CONCLUSION

The court has subject matter jurisdiction over the plaintiff's two requests for injunctive relief. He has demonstrated his right to all the relief he seeks at this time. There is irreparable harm, as the plaintiff will be unable to speak effectively on these

matters if relief is not granted, and there is a likelihood the plaintiff will prevail on the merits. Further, the union has failed to demonstrate that any harm will befall it.[3] Lastly, the public interest, which this court may consider, *see Standard & Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 711 (2d Cir.1982), is served by granting the preliminary injunction. "[T]he right each [union] member has to vote must be 'meaningful.'" *Bunz,* 567 F.2d at 1121. To be meaningful, the membership must receive all viewpoints. Therefore, it is ORDERED, that pending the final determination of this action,

(1) Local 1–2 is preliminarily mandatorily enjoined to supply its current membership mailing list to the commercial mailer which it uses regularly by no later than 5 p.m. on August 24, 1988, and to direct that mailer to prepare plaintiff's mail for mailing at its normal rates and deliver said mailing to the appropriate postal facility without delay. This injunction applies to literature directed to the September removal vote and the March election vote. The plaintiff may use the commercial mailer as often as he desires, so long as each mailing is addressed to either of these two votes. Each time the plaintiff desires to mail literature, he should notify Local 1–2. The union is ordered to supply to the commercial mailer a membership mailing list that is current as of the time it receives the plaintiff's notification, if the membership mailing list should change subsequent to August 24, 1988. If there is no change in the membership mailing list, the union must notify the plaintiff of this fact as early as possible. The cost of each and every mailing, including postage, shall be borne by the plaintiff; and

(2) Local 1–2 is preliminarily mandatorily enjoined from advancing the date of the September removal vote from September 20 to an earlier date.

Because there has been no proof of likelihood of harm to Local 1–2, the plaintiff need not post a bond. *See International*

*Controls Corp. v. Vesco,* 490 F.2d 1334, 1356 (2d Cir.), *cert. denied,* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974).

SO ORDERED.

---

**3.** The union's argument that "the confidence of the membership in the procedures outlined in the By–Laws w[ill] be eroded" if the court grants injunctive relief, *see* Memorandum in Opposition at 11, is without merit.