Thomas MORAN, et al., Plaintiffs,

v.

John WALSH, et al., Defendants.

No. 91 CIV. 1524 (DNE).

United States District Court,
S.D. New York.

April 1, 1991.

Lewis, Greenwald, Kennedy, Lewis, Clifton & Schwartz, P.C. (Arthur Z. Schwartz, of counsel), New York City, for plaintiffs.

Irwin T. Geller, Utility Workers of America Local 1–2, New York City, for defendants.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiffs move for a preliminary injunction ordering (i) defendants to conduct the next union membership meeting during proscribed month, (ii) to have a proposed by-law voted on at next union meeting, and (iii) to have access to, photocopy, and distribute union documents to the union membership prior to the next union meeting. For reasons to be discussed, plaintiffs' motion is granted.

### I. Background

The adversaries in this litigation, no strangers to the Southern District of New York,[1] are rival factions of defendant Local 1–2, Utility Workers of America ("Local 1–2"), which represents approximately 13,000 employees of Consolidated Edison Company of New York ("Con Edison"). Plaintiffs are part of a group of Local 1–2 members called Members' Voice. Defendants are members of the ruling slate of Local 1–2, specifically Walsh, its President, Goodman, its business agent, Geller, as fiduciary of Local 1–2, and Burkhart, chairman of Local 1–2's by-law committee, all of whom assumed their current offices on September 5, 1990.

This particular dispute involves two matters: the timing and consideration of plaintiff Moran's submission of a series of proposed electoral amendments to the Local 1–2 by-laws, and a series of votes on six months expenditures made by the current leadership of Local 1–2. Each of these matters must be voted on by the membership of Local 1–2, and the timing and procedure for those votes is at issue.

In order for a member of Local 1–2 to affect a change in the by-laws, he must submit the proposed change to be read at a membership meeting of Local 1–2. By Article V, Section 1 of the Local 1–2 by-laws, adopted in 1971, such membership meetings must be held four times per year. For the 19 years between 1971 and September, 1990, Local 1–2's quarterly membership meetings were held in February, April, September, and November. By Article V, Section 2, notice of such meetings shall be posted on employer bulletin boards, and in the Local 1–2 publication *The Record*. Further, the 19 year practice of Local 1–2 was that notice of a membership meeting by way of *The Record* would be mailed at least 15 days in advance of the meeting.[2]

The relevant defendants first assumed office on September 5, 1990 after their slate was elected. Breaking with Local 1–2's previous 19 years of practice, the new administration called the next membership meeting for October 2, 1990, and did not advertise that meeting in *The Record*.

Article XXIV of the Local 1–2 Constitution sets out the process that must be followed to amend its by-laws. First, a proposal must be submitted to the secretary-treasurer to be read at a regular membership meeting (the "first reading"). The proposal must then be submitted to the by-law committee for review and comment (the "by-law committee review"). At the next membership meeting, the report of the

**1.** Rival factions at Local 1–2 have been battling each other in this Court for many years. There have been numerous lawsuits involving essentially the same adversaries that have resulted in the entry of five preliminary injunctions, and four permanent injunctions. Those are *Fight Back Committee v. Gallagher,* 115 L.R.R.M. 2685 (S.D.N.Y.1983); *Fight Back Committee v. Gallagher,* 117 L.R.R.M. 2672 (S.D.N.Y.1984); *Fight Back Committee v. Gallagher,* 120 L.R.R.M. 2372 (S.D.N.Y.1985); *Cotter v. Owens,* 120 L.R.R.M. 2124 (S.D.N.Y.1985); *McAfee v. Local 1,* 120

L.R.R.M. 2174 (S.D.N.Y.1985); *Cotter v. Helmer,* 692 F.Supp. 313 (S.D.N.Y.1988); *Cotter v. Helmer,* 132 L.R.R.M. 2351 (S.D.N.Y.1988); *Alfano v. Briody,* Slip Opinion, March 3, 1990, 90 Civ. 2026 (S.D.N.Y.).

**2.** On one occasion, in April, 1985, a district court voided the results of a membership meeting for which sufficient notice was not given. *Fight back Committee v. Gallagher, supra,* 120 L.R.R.M. 2372.

by-law committee is read to the membership (the "second reading"). At the third membership meeting, the proposal shall be voted on by secret ballot by the whole membership (the "vote"). A two-thirds majority is necessary for adoption.

It was at the October, 1990 meeting that plaintiff Walsh began the three meeting process to have his proposed by-law amendment considered for a vote by the membership of Local 1–2 (the "original proposal"). The original proposal was given its first reading at that meeting. On November 2, 1990, Burkhart, chairman of the by-law committee, communicated questions and comments to Moran about the original proposal. Among the comments of the by-law committee was a question about the specific process of group voting that Moran proposed.

Moran responded by submitting a series of amended by-laws to the by-law committee on November 14, 1990, and withdrew his original set of by-law proposals (the "amended proposal"). The original proposal's withdrawal was confirmed by Burkhart on December 14, 1990. Local 1–2 then called its next membership meeting for December 18, 1990, for which the membership was given only six days advance notice. On December 18, 1990, prior to that night's meeting, Moran advised Burkhart that he did not want his original proposal withdrawn, but to be considered as amending the original proposal. No quorum was met at the December 18, 1990 meeting, and that meeting was postponed.

On January 7, 1991, Moran informed Burkhart by letter that he considered the original proposal amended and not withdrawn, so that it would be given a second reading at the next membership meeting (the "amended original proposal"). The next membership meeting was scheduled for March 7, 1991. Moran was not advised in advance of March 7, 1991 as to how his proposal would be treated at that meeting.

In addition to Moran's proposal, the membership was also scheduled to vote to approve legal and consulting expenses (the "expenditures") made by Local 1–2 during the previous six months. Between September, 1990, when the Walsh administration assumed office, and March, 1991, no reports of Local 1–2's financial condition were made to the membership. In early 1991 plaintiffs sought access to minutes of Local 1–2 board meetings and financial records about the expenditures in advance of the March membership meeting (the "documents"). Defendants refused to allow plaintiffs access to the documents. This litigation followed.

On March 5, 1991, this Court entered a temporary restraining order requiring the by-law committee to give Moran's amended original proposal its second reading at the March 7, 1991 meeting. This Court enjoined Local 1–2 from voting on the expenditures until plaintiffs had an opportunity to review and copy the requested documents, and further ordered Local 1–2 to permit the plaintiffs to examine and copy the documents sought by plaintiffs.[3] The Court set a hearing date for March 12, 1991.

On March 8, 1991, plaintiffs sought and this Court signed (by Haight, J., sitting in Part I), an order directing defendants to show cause why they should not be held in contempt of the March 5, 1991 order directing them to allow plaintiffs to review and copy the documents. Defendants' position was that the March 5, 1991 order did not permit plaintiffs to photocopy the documents, but only to review them and hand copy them. That order was made returnable on March 12, 1991, the date this Court originally set for the hearing on plaintiff's preliminary injunction. On March 12, 1991, this Court held the hearing to consider plaintiff's applications for preliminary injunctive relief, and for contempt.

At that hearing, this Court directed defendants to make the documents available to plaintiffs only, and not for full dissemination to the membership, pending the parties' submission of proposed protective orders that set out procedures to limit the

---

**3.** On March 6, 1991, defendants brought an order to show cause why the temporary restraining order entered by this Court on March 5, 1991, should not be vacated. This Court returned that application unsigned.

dissemination of the documents. This Court also directed the parties to submit proposed findings of fact and conclusions of law. On March 22, 1991, the Court held a further hearing on the subject of the dissemination of the documents.

## II. Discussion

In this circuit, it is well settled that in order for a movant to obtain a preliminary injunction, he must demonstrate (a) irreparable harm, and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly towards the movant requesting the preliminary injunctive relief. Since plaintiffs demonstrate irreparable harm and sufficiently serious questions going to the merits of their application to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor, a preliminary injunction should issue.

Plaintiffs allege that defendants failure to follow the nineteen-year old procedure of holding Local 1–2's membership meetings during the months of February, April, September, and November, combined with the lack of proper notice to the membership of the scheduled meetings, has deprived the membership of its right to vote on union business, thus constituting irreparable harm. Additionally, plaintiffs argue that defendants failure to allow plaintiffs to inspect the documents prior to the meeting where those expenditures were to be voted deprives them of their right to be informed about union business, and constitutes irreparable harm.

Further, plaintiffs argue that these matters constitute sufficiently serious questions going to the merits to warrant injunctive relief, since defendant's actions involving the scheduling of the meetings and refusal to allow plaintiffs to inspect the documents violate federal law, and Local 1–2's by-laws.

In the context of a labor dispute involving the consideration and voting on union business, it is clear in this circuit that:

"[T]he loss of rights of union members to full and equal participation in the affairs of a union is the type of injury which the courts have historically prevented through the issuance of preliminary injunctions"

*Cotter v. Helmer,* 692 F.Supp. 313 (S.D.N. Y.1988); *Fight Back Committee v. Gallagher,* 115 L.R.R.M. 2685, 2687 (S.D.N.Y. 1983).

### A. The By–Law Dispute

Plaintiffs argue that were Moran's proposal not be voted on by the membership at the next membership meeting, that would constitute a "loss of rights of union members to full and equal participation in the affairs of a union" which should be remedied by a preliminary injunction. To determine whether Moran's proposal should be voted on at the next membership meeting, this Court must answer three questions: First, whether Local 1–2's by-laws require membership meetings during the months of February, April, September and November; second, whether adequate notice was given of the meetings held since September, 1990; and third, whether a failure to have a membership vote on Moran's proposal at the April, 1991 meeting would violate his rights as a union member.

With respect to when Local 1–2 must hold its membership meetings, while Local 1–2's by-laws do not explicitly state that membership meetings must be held in February, April, September and November, they had been held during those months for 19 straight years. As the Court stated at oral argument, 19 straight years of holding meetings during the same months would indicate that those months are the regular meeting months, that is the tradition and expectation of the membership. In other areas of the law, possession for twenty straight years would constitute adverse possession.

Further, other sections of the Local 1–2 by-laws refer to specific business that must be conducted during meetings in specified months, on the February, April, September and November schedule. *See, e.g.,* Article V, Section 5 (nominations for officers to

take place at February meeting); Article VII, Section 2 (Election Board elected at November membership meeting). Accordingly, the Court finds that to not hold membership meetings in February, April, September and October violates the by-laws of Local 1–2.

■ Second, Local 1–2 did not provide sufficient notice to the membership of the meetings it did hold after September, 1990. Local 1–2 did not advertise its October or December 1990 meetings in *The Record.* Defendants argue that they intended only to alter the set schedule of membership meetings. But the fact that these meetings were not publicized (and no quorum was met in the December, 1990 meeting) makes that assertion disingenuous. Further, it has been previously held that sending out notice of a membership meeting nine days in advance in *The Record* of upcoming meetings constituted insufficient advance notice and was deemed a violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411(a)(1). *Fight Back Committee v. Gallagher,* 120 L.R.R.M. 2372, 2375 (S.D. N.Y.1985) (Ward, J.).

In this instance, the large and geographically diverse membership of Local 1–2 need timely notice of membership meetings in order to be able to attend. The defendants in this instance did not advertise the October and December 1990 meetings at all in *The Record,* thereby depriving the membership of their "rights and privileges ... to attend membership meetings ..." and thereby violates Section 101(a)(1) of the LMRDA.

■ Third, if Moran's proposal were not to be voted on at the April, 1991 membership meeting, that would be a violation of both Local 1–2's by-laws, and Section 101(a)(1) of the LMRDA. Delay in the presentation of by-law proposals for a vote by membership has been held to be a violation of Local 1–2's by-laws that govern the consideration of new by-law procedures, and Section 101(a)(1) of the LMRDA. *See Fight Back Committee v. Gallagher, supra,* 115 L.R.R.M. at 2687 (holding that

delaying reading of proposed by-law amendments constituted irreparable harm by violating by-laws); *Fight back Committee v. Gallagher, supra,* 120 L.R.R.M. at 2376 (holding that failure to read proposed by-law amendments violated Section 101(a)(1) of the LMRDA).

Were Local 1–2 to have followed the proper procedure in considering Moran's proposed by-law amendments, then those proposals would be submitted for a secret-ballot vote by the membership at the April, 1991 membership meeting. Local 1–2 argues that the Court should deny plaintiff the injunction, and instead allow Local 1–2 to consider Moran's proposals as being submitted *de novo.*[4] Such an outcome would mean that the proposals would not be voted on until September or November of 1991. Since Local 1–2 failed to follow its own by-laws and conform with Section 101(a)(1) of the LMRDA, considering Moran's proposals *de novo* would result in unreasonable delay in their consideration, and would violate Local 1–2's by-laws and Section 101(a)(1) of the LMRDA.

■ Alternatively, defendants ask that this Court deny plaintiffs' application for relief for their failure to exhaust internal Local 1–2 administrative remedies, in this instance re-submitting Moran's proposals to the by-law committee. While this Court has "the discretion to require exhaustion when the facts presented so merit," *Petrazzulo v. Lowen,* 534 F.Supp. 173, 175 (S.D.N.Y.1982) (Duffy, J.), the record in this case indicates exhaustion is inappropriate. In this case, plaintiffs have already submitted the proposal to the by-law committee, and received comments. As a result, it is unlikely that further administrative proceedings would yield any result other than further delay.

Since defendants actions in scheduling membership meetings since September, 1990, and process followed by the union in considering Moran's proposals violate Local 1–2's by-laws and federal law, plaintiffs have demonstrated irreparable harm.

---

**4.** Defendants also assert that plaintiff's proposals violate applicable law, but the record does not support such a blanket and unsupported assertion.

These violations constitute sufficiently serious questions going to the merits to make them a fair ground for litigation. Further, since this circuit has held that union members being delayed from consideration of union business may constitute irreparable harm, the balancing of the equities favors plaintiffs since issuance of the injunction would expedite union members' ability to exercise their LMRDA free speech rights.

### B. Discovery of Union Documents

The second portion of this dispute involves the refusal of defendants to allow plaintiffs to inspect and copy documents relating to expenses incurred by Local 1–2 during the period of September, 1990 until March, 1991. Plaintiffs argue that they are entitled to examine and copy the records by virtue of 29 U.S.C. § 431(c), which states:

> "Every labor organization required to make a report under this title ... shall make available the information required to be contained in the report to all of its members"

> \* \* \* \* \* \*

> [Upon suit a court shall] permit such member for just cause to examine any books, records, and accounts necessary to verify such report.

29 U.S.C. § 431(c).

Courts have interpreted this section as granting union members the right to examine and copy the books and records of their union as "necessary to further the purpose of the Act to make full information concerning a union's financial affairs available to its members." *Conley v. United Steelworkers of America, Local 1014, et al.,* 549 F.2d 1122, 1124 (7th Cir., 1977). While the Court is mindful of the protection placed upon union documents by 29 U.S.C. § 431(c), the plaintiffs in this case have demonstrated just cause to see the requested documents, and this Court has previously ordered that they be produced.

■ Since the Court has already ordered the defendants to make a limited production of documents to the plaintiffs attorneys, the only issue for this Court now to decide is whether any limitations should be placed upon their dissemination. Defendants have argued for a limited production only to plaintiffs' counsel, whereby the membership of Local 1–2 would not be permitted to inspect photocopies of the documents.

Defendants specifically object to the dissemination of executive board minutes, and attorney's bills. At oral argument held on this matter, defendants counsel admitted that any member of Local 1–2 could go to union headquarters and inspect these documents. His only reason to oppose such dissemination was potential embarrassment to the leadership. Further, it is important that the membership be informed about the amount of attorneys' fees being generated by Local 1–2 so that it may make an informed vote on how the leadership is spending its money. Perhaps if the union members that contribute to the rival groups at Local 1–2 that have litigated for so many years see the cost of such action, a more unified local may result.

As a result, the defendants have not persuaded the Court that the documents should not be available to the membership. It has been held in this Circuit that "[a] union democracy cannot function effectively if the members are not adequately informed of pertinent matters involving an upcoming referendum." *Petrazzulo v. Lowen, supra,* 534 F.Supp. at 177.

As has already been discussed, an action that denies a union member his right to make an informed vote is a violation of the LMRDA. In this instance, defendants did not make financial disclosures to the membership from September, 1990, until March, 1991. In the next meeting, the membership will be called on to ratify a number of expenditures all at once. In order that the membership be "adequately informed of pertinent matters involving an upcoming referendum," *id.,* the plaintiffs must be allowed to disseminate the documents in question to the membership.

### III. Conclusion

For the reasons stated above, plaintiffs' motion for a preliminary injunction is granted. Accordingly,

IT IS HEREBY ORDERED that defendants are preliminarily enjoined from:

(a) failing to conduct its next membership meeting in April, 1991, but no sooner than 21 days from the date of this Order; and

(b) failing to conduct a secret ballot vote on plaintiff Moran's by-law proposal at that meeting; and

(c) failing to make by first class mail notice to the membership of Local 1–2 of the April, 1991 meeting and vote, at least 15 days before the meeting; and

(d) failing to allow plaintiffs to review, copy and disseminate, consistent with this opinion, the following documents:

(1) Minutes of membership meetings held October 2, 1990, and December 18, 1990;

(2) Minutes of all executive board meetings held during the period September 5, 1990 through February 27, 1991;

(3) Arbitration Award reclaimed pension by former officers;

(4) Monthly financial statements from June 30, 1990 through December 31, 1990;

(5) Bills and checks paid to the following consultants:

  a.  Bernard Wengorover—accountant

  b.  Leddy & Co.—auditor

  c.  Nestegg Associates—benefits consultant

  d.  Martin Segal Co.—pension consultant

  e.  American Arbitration Association—contract ratification

  f.  Steven Mangione Associates—public relations

  g.  Thomas Galvin—safety

  h.  New York Committee on Occupational Safety & Health—lectures

(6) Contract arbitration expenses—bills and payment documents to the following arbitrators: Edward Levin, Elliot Schrifman, Howard Edelman, Eric Schmertz, William Glinsman, Janet Spencer, Matthew Kelly, Eric Jensen, Susan MacKenzie, Daniel Brent, Ralph Berger, and the New York Power Authority for Room Rental;

(7) Payments to the following attorneys:

  a.  Arthur Schwartz—final invoice

  b.  Donald Menagh—settlement of final bill

  c.  Kevin Jenkins—September 20, 1990 through February 28, 1991, and additional payments for 1988

  d.  Irwin Geller—September, 1990

(8) Loan from Amalgamated Bank and security agreements.

So Ordered.