Daniel CONLEY et al.,
Plaintiffs-Appellees,

v.

UNITED STEELWORKERS OF AMERICA, LOCAL UNION NO. 1014 et al.,
Defendants-Appellants.

No. 76–1736.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 4, 1977.
Decided Feb. 25, 1977.

Bernard M. Mamet, Chicago, Ill., for defendants-appellants.

Harold Abrahamson, Hammond, Ind., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, CUMMINGS, Circuit Judge, and EAST, Senior District Judge.*

EAST, Senior District Judge.

Appellants-defendants are Local Union No. 1014 of United Steelworkers of America and its officers (Union). Appellees-plaintiffs are members of Local Union No.

*Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1. 29 U.S.C. § 431(c) provides:
"Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs,

1014 (Members). The District Court was involved with the proper construction of §. 201(c) of Title II of the Labor-Management Reporting and Disclosure Act of 1959 (Act), 29 U.S.C. § 431(c).[1]

The Union appeals the order of the District Court directing that the Union permit the Members to examine, with the right to copy, certain of the Union's financial records covering the period January 1, 1971 through December 31, 1975 under specified conditions.[2]

The Union is required under 29 U.S.C. § 431(b) to submit annual financial statements, called LM–2 reports, to the Secretary of Labor. Section 431(c) permits the members of the reporting unions ". . . for just cause to examine any books, records, and accounts necessary to verify [the LM–2 reports]."

In 1972, the Members, claiming irregularities in the allowance and payment of expenses and reimbursement for "lost time," sought to examine the books and records of the Union to verify its LM–2 reports. In September of 1974, arrangements were made to allow the Members to conduct the examination.

However, the impasse was reached when the Union refused to allow the Members to make copies of the records on the ground that the examination provided for in § 431(c) did not include the right to copy.[3]

allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

2. Union also contends the District Court erred in dismissing its counterclaim alleging abuse of process in the mere filing of the action to enforce the asserted right to copy. This contention is without merit.

3. The Union does not contend that the Members have failed to demonstrate the "just cause" necessary under § 431(c) to trigger their right to conduct an examination of the Union's books, records and accounts. The Union asserts that it was and is prepared to voluntarily make its books, records and accounts available for the perusal of the Members and resists only the copying of them.

Thereupon the Members instituted these proceedings to enforce their right to examine the Union's records, arguing that the scope of the examination contemplated by § 431(c) included the right to copy. The District Court agreed but stayed its order that the Members be permitted to make the copies pending the Union's appeal of the issue to this Court.

For the reasons hereinafter stated, we agree with the conclusion of the District Court and affirm.

■ A primary purpose of the Act was to make full information related to the financial affairs of unions available to members in order that they would be " 'strengthened in their efforts to rid themselves of untrustworthy or corrupt officers.' " *Antal v. District 5, United Mine Workers of America*, 451 F.2d 1187, 1189 (3d Cir. 1971), quoting House Report # 741, 2 U.S.Code Cong. & Admin.News, 1959, at pp. 2430–31. Nevertheless Congress was concerned with the possibility that if access to a union's records was too readily available, harassment could result. In discussing the scope of the showing necessary to satisfy the just cause requirement of § 431(c), the Ninth Circuit Court of Appeals in *Fruit and Vegetable Packers & Ware. Local 760 v. Morley*, 378 F.2d 738, 742–43 (9th Cir. 1967), stated:

"When Senate Bill 1555 (which later became the Labor-Management Reporting and Disclosure Act of 1959, . . .) was on the floor of the Senate, Senator Goldwater offered an amendment which would give members the unqualified right to examine union records. Senator Kennedy, fearing that an unqualified right of inspection would lead to harassment, objected to the amendment. As a compromise Senator Goldwater amended his amendment to provide for inspection for 'proper cause,' and, as amended, the amendment was adopted. Although this language was omitted in favor of the House-version of 'just cause,' it seems clear that Congress designed the just cause requirement to prevent continuous and undue harassment . . . . . ."

Senator Javits, who was instrumental in reaching this compromise, while discussing the proposal to require "proper cause" stated:

"I think this is an excellent solution of the matter, because it equates the rights of the union members with the rights of corporation stockholders, and it prevents a proliferation of the inspection. I believe the amendment is acceptable because it would prevent vexatious forays into the union's books." Congressional Record 6522–23, Senate, April 23, 1959.

Thus it appears from the limited legislative history regarding the adoption of § 431(c) that protection of unions from harassment was to come from the express predication of the right to examine upon an initial showing of "just cause" rather than an implied denial of the right to copy. Moreover, extending the right to copy to union members is necessary to further the purpose of the Act to make full information concerning a union's financial affairs available to its members. Many unions handle vast sums of money involving a myriad of transactions which are reportable under the Act. Cf. *Antal v. District 5, United Mine Workers of America, supra* at 1188 n.3. Verification of these reports requires a detailed painstaking analysis which due to space and time constrictions can only be partially completed on the premises of the union. Without the right to copy, the members would necessarily be unable to adequately complete their analysis away from the union's premises and their right to examine the records in order to verify the LM–2 reports would be nullified.

■ A finding that § 431(c) includes the right to copy is also consistent with the development of the case law construing this section. In *Local No. 1419, ILA, General Longshore Wkrs. U. v. Smith*, 301 F.2d 791 (5th Cir. 1962), the Court of Appeals held that the right of examination granted by § 431(c) was not restricted to exercise by members alone but that they were entitled to the assistance of experts in making the examination. In reaching this decision, the

court noted that allowing such assistance was consistent not only with the underlying purpose of the Act but also with the analogous rule that the shareholders of a corporation have the right to expert assistance in examining the records of the corporation. *Id.* at 796. More recently, the Court of Appeals in *Antal v. District 5, United Mine Workers of America, supra* at 1188, held that in conducting an examination pursuant to § 431(c), the member's accountant must be allowed " '. . . unrestricted access to and use of his own work papers.' "

■ Finally, it is clear that extending the right to copy is consistent with the analogy to the rules governing a shareholder's right to examine corporate records. At common law and pursuant to statute, the right to inspect the corporation's books carries with it the right to make copies therefrom. 18 C.J.S. Corporations § 508; 18 Am.Jur.2d Corporations § 202.[4]

■ The express purpose of the examination permitted by § 431(c) is to allow union members access to the information necessary to verify the LM–2 reports and the Members should, therefore, be free to make such copies as are reasonably necessary to the conduct of the examination. Section 431(c) is obviously not intended to allow the harassment of union officials and the Union is, of course, free to seek a protective order from the District Court to prevent such harassment and copying of protected materials.

The order of the District Court entered on May 20, 1976 is affirmed.

AFFIRMED.

---

4. This Court is not unmindful of the Union's argument that a review of the overall statutory scheme demonstrates that when Congress intended *copies of records to be available,* it expressly provided therefor (*e. g.,* 29 U.S.C. § 161(1); 15 U.S.C. § 49, first paragraph, made applicable to the Act under consideration by 29 U.S.C. § 521(b)). While a review of the various statutory provisions lends some credence to this claim, we do not find it persuasive. In support of this contention, the Union correctly points out, *inter alia,* that when Congress in § 401(c) of the Act (29 U.S.C. § 481(c)) extended to candidates for union office the right to "inspect" membership lists under limited conditions, it did not intend to grant an absolute right *to copy those lists. Conley v. Aiello,* 276 F.Supp. 614 (S.D.N.Y.1967). See also 29 C.F.R. § 452.9(b). Rather, in its effort to balance the need of candidates for access to membership lists against the danger that copied lists would be used for improper purposes, Congress prohibited discrimination in the use of the lists and placed an affirmative burden on the union to mail, at the candidate's expense, campaign literature on his behalf to the membership. Section 481(c). The legislative history with regard to access to membership lists make it clear that Congress intended to draw a balance between *competing interests without conferring an ab*solute right to copy the lists. *Conley v. Aiello, supra* at 616. The legislative history regarding the scope of the examination afforded pursuant to § 431(c) *is silent on the right to copy* but as previously explained it indicates that Congress intended to strike a balance by limiting the right to examine to those who could demonstrate "just cause" therefor. Thus, the mere absence of an express provision for copying is an insufficient basis on which to conclude that Congress intended to prohibit copying which is necessary to effectuate the right to examine the records to verify the LM–2 reports.