**Robert McGINNIS, Plaintiff,**

v.

**LOCAL UNION NO. 710, INTERNA-TIONAL BROTHERHOOD OF TEAMSTERS, Defendant.**

No. 85 C 9168.

United States District Court, N.D. Illinois, E.D.

July 24, 1987.

Robin B. Potter, Potter & Schaffner, Chicago, Ill., for plaintiff.

Barry M. Bennett, Asher, Pavalon, Gittler & Greenfield, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiff is a member of Local 710, International Brotherhood of Teamsters ("Local 710"). He brought this action pursuant to 29 U.S.C. § 431(c) seeking access to certain financial records maintained by Local 710. On May 15, 1987, Magistrate Balog issued a Report and Recommendation directing Local 710 to provide McGinnis access to the relevant financial documents and to allow McGinnis to copy and publish them. The Magistrate also recommended imposing Rule 11 sanctions against Local 710's counsel. Local 710 objects to the magistrate's

report. For the reasons stated herein, this court adopts Magistrate Balog's Report and Recommendation in part and rejects it in part.

## FACTS

McGinnis first sought access to Local 710's financial records in February of 1985. Plaintiff formally requested permission to inspect Local 710's financial records to verify the union's LM–2 annual reports. In particular, plaintiff sought to verify the reports which had been filed with the United States Department of Labor for fiscal years 1982 and 1983. Local 710 refused plaintiff's request.

On October 30, 1985, McGinnis initiated an action to compel Local 710 to permit inspection of those books and records relating to the LM–2 reports filed by the union with the Secretary of Labor. The union made an offer of judgment which McGinnis accepted; judgment was entered on August 12, 1986. The judgment order allowed McGinnis to examine the union's books, records, and accounts relating to proscribed misconduct. The acts of misconduct were set forth in detail.

McGinnis attempted to inspect Local 710's books pursuant to the August 1986 judgment. A dispute arose over which documents were to be made available for inspection. Local 710 refused to display any documents until the dispute was resolved. McGinnis sought judicial enforcement of the August 12, 1986 judgment. On January 13, 1987, Magistrate Balog issued his Report and Recommendation enforcing the judgment order. On February 3, 1987, that Report and Recommendation was adopted by this court.

With this order in hand, McGinnis once again attempted to inspect Local 710's financial records on February 27, 1987. However, Local 710 refused to comply with the settlement order unless McGinnis agreed not to publish or distribute any of the financial records. McGinnis refused to agree to this unilaterally imposed limitation. McGinnis was forced once again to return to this court to seek an order enforcing his right to inspect Local 710's financial records. On May 15, 1987, Magistrate Balog issued another Report and Recommendation. He recommended that McGinnis be allowed to obtain the documents sought without any limitation on publication. In addition, the magistrate recommended that Rule 11 sanctions be imposed against counsel for Local 710. Local 710 objects to this May 15, 1987 Report and Recommendation. This court, will now address Local 710's objections.

## II. DISCUSSION

### A. *Inspect, Copy and Publish Union's Financial Records*

Section 201(c) of the Labor-Management Reporting and Disclosure Act of 1958 states:

> Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such report. The court in such action may, in its discretion, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 431(c).

The primary purpose of § 201 is to make full information related to the financial affairs of unions available to union members to strengthen their efforts to rid their unions of unworthy or corrupt officers. *Conley v. United Steelworkers of America*, 549 F.2d 1122, 1124 (7th Cir.1977). However, Congress was also concerned that an unqualified right to inspect a union's financial records would result in harassment to unions. In order to prevent vexatious forays into a union's financial records, Con-

gress inserted language into § 201 requiring a union member to show "just cause" before examining a union's records. *Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 778–779 (D.C.Cir.1984). A union member has just cause to examine a union's records "if a reasonable union member would be put to further inquiry." *Johnson v. Hospital Employees Local 1199*, 121 LRRM 2889, 2890 (S.D.N.Y.1986) [Available on WESTLAW, DCT database]; *Mallick v. International Brotherhood of Electrical Workers*, 749 F.2d 771, 781–83 (D.C.Cir.1984).

■ A union member also has the right to inspect and photocopy the union's financial records relating to LM–2 reports once the union member establishes "just cause" to inspect the records. *Conley v. United Steelworkers of America*, 549 F.2d 1122 (7th Cir.1977). Extending the right to union members to copy financial records is necessary to further the purpose of the Act, to make full information concerning a union's financial affairs available to its members. Verification of detailed financial records requires technical expertise and painstaking analysis. A lawyer or certified public accountant cannot perform a proper analysis by memory. An analyst probably needs to conduct his analysis away from the union's premises. This can only be done if the financial records can be photocopied.

The final issue is what use may a union member make of the financial records he has inspected and photocopied. This issue was addressed and resolved in *Johnson v. Hospital Employees Local 1199*, 121 LRRM 2889 (U.S.Dist., S.D.N.Y.1986) [Available on WESTLAW, DCT database]. In *Johnson,* the court held that a union member is free to publish those financial records he inspects and photocopies. Moreover, the court ordered the union to refrain from imposing any limitation upon the use the union member may make of the financial records examined and copied. The court expressly dismissed the union's concern about what employers or other anti-union interest may discover as the result of disclosure.

In the instant case, Local 710 expressly admits that McGinnis satisfied the "just cause" requirement. First, Local 710 entered into a consent order allowing McGinnis to view the financial records. Second, Local 710 repeatedly declares that McGinnis is entitled to examine its records in its memorandum of law in support of its objection to the magistrate's report.

Nevertheless, Local 710 refuses to produce the documents requested by McGinnis. Local 710 believes it has the right to premise production of documents to McGinnis upon two conditions: (1) that he not publish any information discovered through his inspection unless the inspection reveals that the LM–2 reports filed by Local 710 contain the inaccuracies which McGinnis' complaint claimed existed, and (2) that McGinnis not provide any information discovered through his inspection to anybody other than members of Local 710 and appropriate law enforcement authorities.

■ This court finds untenable Local 710's attempt to unilaterally impose conditions upon production of its financial records. Neither this court nor the magistrate could find any support for the union's position. This court finds nothing in the statute or the agreed judgment order to indicate that McGinnis is barred from publishing the information he gleans from his inspection of Local 710's financial records. A review of the relevant case law finds no support for the union's position as well. Similarly, Local 710 has failed to cite any statutory provision that would bar McGinnis from publishing the financial information obtained through inspection. In addition, Local 710 produces no contractual agreement wherein McGinnis agreed to relinquish his right to publish these records. Instead, Local 710 attempts to unilaterally impose this condition barring publication after Local 710 was ordered to produce the documents by this court.

This court's holding is consistent with the legislative intent behind § 201(c) of the Labor-Management Reporting and Disclosing Act of 1959. 29 U.S.C. § 431(c). The primary purpose of this section was to make full information related to the finan-

cial affairs of unions available to members in order to strengthen their efforts to rid themselves of untrustworthy or corrupt officials. *Conley v. United Steelworkers of America,* 549 F.2d 1122, 1124 (7th Cir. 1977). Allowing a union member to publish the information he inspects necessarily furthers the purpose of the Act and the intent of Congress. If union members are given the ammunition (financial records of union) to combat untrustworthy or corrupt officials, then they must also be given the weapon to use that ammunition. The publication of the inspected financial records is the weapon to combat corrupt officials.

This court is sensitive to a union's need to prevent the publication of truly sensitive information that is not relevant to the issuance of an LM–2 report to the Secretary of Labor. This court believes a union may seek an order preventing the publication of sensitive information that is embarrassing or oppressive. This request should be made when the court is determining whether a union member has "just cause" to inspect the union's financial records. Upon a request, the trial court should balance the union's interest in nondisclosure against the union member's interest in public disclosure. Publication should be barred only if the harm to the union strongly outweighs the public policy favoring access for union members to inspect, copy, and publish the financial records. In the instant case, Local 710 failed to raise this request during the "just cause" determination. The issue is now moot and the union cannot block publication via the Labor-Management Reporting and Disclosing Act of 1959.

If the union truly believes publication must be prevented because it would lead to an embarrassing or oppressive result, then it should have brought a motion for protective order. Local 710 failed to do so, and this court will not raise a motion for protective order sua sponte. Even if it did, the motion would be denied because Local 710 has presented no powerful evidence why publication of its financial records would be annoying, embarrassing, oppressive, or burdensome. Local 710's mere presentation of legal conclusions is not sufficient.

In sum, Local 710 cannot block the publication of its financial records absent a court order. It failed to raise the question of publication when the parties entered into the agreed order implying McGinnis had "just cause" to inspect the records. Moreover, Local 710 did not seek a protective order barring publication. Instead, Local 710 merely unilaterally imposed a condition upon inspection that would bar McGinnis from publishing the financial records. Such conduct is improper and unacceptable.

### B. *Sanctions*

The final issue to be addressed is whether sanctions should be imposed against Local 710, the attorney for Local 710, or both. The magistrate believed attorney's fees and costs should be awarded to plaintiff. The magistrate recommended imposing Rule 11 sanctions against counsel for Local 710. This court does not believe such action is warranted.

This court believes costs and attorney fees should be awarded to plaintiff and paid by Local 710. This court does not find Rule 11 the appropriate vehicle for reimbursement. Section 201(c) of the Labor Management Reporting and Disclosure Act specifically provides for reimbursement. Section 201(c) states in part "[T]he court ... may, in its discretion, allow a reasonable attorney's fee to be paid by the *defendant,* and costs of the action." (Emphasis added.)

■ The awarding of fees and costs is clearly warranted in this action. Plaintiff has sought access to Local 710's records since February of 1985. Plaintiff was required to initiate a lawsuit to inspect what it has all along been entitled to inspect. A judgment was entered in August of 1986 requiring Local 710 to allow plaintiff to inspect the union's financial records. Plaintiff was forced to seek enforcement of this court's order numerous times. His attempt to inspect the financial records has been thwarted numerous times. Each time plaintiff attempts to inspect Local 710's records, Local 710 invents new excuses to prevent such an inspection. This court finds that Local 710 should have raised all the issues it subsequently raised at its first

opportunity, but no later than this court's entering judgment on August 7, 1986. Local 710's conduct has been unacceptable and caused harassment, delay and undue burden upon plaintiff.

The next question is who shall bear the burden of attorney's fees and costs. The magistrate imposed sanctions against Local 710's counsel because the magistrate believed sanctions against Local 710 would result in the union members of Local 710 paying the fees and costs. That result struck the magistrate as inequitable. This court believes otherwise. Congress passed § 201(c) with the intent of assessing costs and attorneys' fees against a defendant union. The legislative language expressly allows sanctions to be imposed against the defendant union who fails to comply with the mandates of § 201(c). Section 201(c) does not authorize sanctions to be awarded against a union's counsel and Rule 11 does not apply here. Although the union members must ultimately pay the sanction through their dues, their suffering is not without recourse. If the union members feel the conduct of Local 710 has been inexcusable, improper, or unacceptable, then their recourse is to vote the union officials out of office and replace these officials with people who will respond to the demands of the union members. Such demands would presumably include total compliance with § 201(c).

This court directs plaintiff to submit an affidavit stating the attorneys' fees and court costs incurred in bringing this motion to enforce judgment, preparing memorandum in support of his motion, and for any response to Local 710's objections to the magistrate's report. This affidavit shall be submitted to this court within 30 days.

## CONCLUSION

This court adopts Magistrate Balog's Report and Recommendation in part and rejects it in part. This court orders Local 710 to grant McGinnis access to the financial records at issue, and to allow McGinnis to copy and publish them. In addition, this court awards McGinnis attorney's fees and costs as fully described in this order.

These fees and costs are to be paid by Local 710. However, this court rejects the magistrate's recommendation that Rule 11 sanctions be awarded against Local 710's counsel.

IT IS SO ORDERED.