United States Court of Appeals,

Fifth Circuit.

No. 91-7325.

Manuel M. FERNANDEZ-MONTES, Plaintiff-Appellant,

v.

ALLIED PILOTS ASSOCIATION, Fred Vogel, and C.R. Paty, Defendants-Appellees.

April 1, 1993.

Appeals from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH, and EMILIO M. GARZA, Circuit Judges.

GOLDBERG, Circuit Judge:

The dispute in this case arises from plaintiff Fernandez-Montes' assertion that as a member of his union, the Allied Pilots Association ("APA"), he has a right to obtain copies of certified verbatim transcripts or audiotapes of certain union meetings. Although the union makes audiotapes of its meetings, it is not required to do so by its own constitution and bylaws or by any federal law. The union claims that the audiotapes are made solely to facilitate the preparation of minutes (which are sent to all union members). Although the union refuses to acknowledge that union members have a *right* of access to the audiotapes, in practice the union does permit all union members to come to its offices and listen to the audiotapes on the union's audio equipment.[1]

The APA is required by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 431(a) and (b), to file its constitution and bylaws, as well as periodic reports ("LM Reports") regarding the union's constitution and bylaws and finances, with the Secretary of Labor.[2] The union is also required by the LMRDA to maintain in its files for five years information

[1]Fernandez-Montes contends that the poor quality of the sound equipment at APA's headquarters makes it all but impossible for him to comprehend what he hears on the audiotapes. He seeks to obtain copies of the audiotapes so that he may listen to them at his leisure in his own home. Mr. Fernandez-Montes has never requested permission to bring his own audio equipment to APA's offices. Moreover, despite his claimed lack of facility with the English language, he has never requested permission to bring a translator to union meetings.

[2]29 U.S.C. § 431(a) and (b) requires the following information to be filed with the Secretary of Labor: constitution and bylaws; name and address of union; names and titles of officers;

which will corroborate the LM Reports, in case verification should be sought by the Secretary of Labor or by members of the union who are able to establish "just cause" for suspicion that the union's reports to the Secretary are inaccurate or do not jibe with the union's activities. 29 U.S.C. §§ 431(c) and 436.[3] The union members' bill of rights, 29 U.S.C. § 411, provides union members with a "right to participate," which includes the right to attend union meetings open to the entire membership.[4]

initiation fees for new members and fees for work permits; regular dues required of members; qualifications or restrictions on membership; insurance and benefits offered by the union; authorization for disbursement of funds for various purposes; audits of financial transactions; procedures for regular and special meetings; methods of selection of officers and other representatives to union governing bodies; disciplinary matters; authorization for bargaining demands and strikes; assets and liabilities; receipts; salaries of officers and other employees; direct and indirect loans to officers, employees, and members; loans to businesses; and any other disbursements. Any changes must be filed at least once a year. Reports filed with the Secretary of Labor pursuant to § 431(c) are public information. *See* 29 U.S.C. § 435.

[3]29 U.S.C. § 436 provides:

> "Every person required to file any report under this subchapter shall maintain records on the matters required to be reported which will provide in sufficient detail the necessary basic information and data from which the documents filed with the Secretary may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts and applicable resolutions, and shall keep such records available for examination for a period of not less than five years after the filing of the documents based on the information which they contain."

> 29 U.S.C. § 431(c) provides in pertinent part:

> "Every labor organization required to submit a report under this subchapter shall make available the information required to be contained in such report to all of its members, and every such labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principle office, to permit such member for just cause to examine any books, records and accounts necessary to verify such report."

[4]29 U.S.C. § 411(a)(1) provides:

> "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organizations' constitution and bylaws."

> 29 U.S.C. § 411(a)(2) provides:

> "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor

The APA's constitution and bylaws provide that all members are entitled to receive minutes of union meetings. Plaintiff acknowledges that he has a right to attend meetings and obtain minutes of meetings, but insists that he should not have to attend meetings in order to learn all the details of what transpires at the meetings. In addition to complaining of the expense and time involved in attending meetings, plaintiff insists that he has difficulty comprehending what is said at meetings because English is not his native tongue.

Prior to filing suit, plaintiff made a demand for access *as of right* to the audiotapes, and specifically requested that personal copies be made at his expense. This demand was refused by the union. Plaintiff then filed this law suit in the United States District Court for the Northern District of Texas, asserting claims under § 431.

In his complaint, plaintiff did not specifically point to anything in the union's minutes which made him suspect that any of the union's LM Reports might be inaccurate, false or misleading. He did suggest, however, that he was worried by the lack of "specifics" in the minutes of a meeting at which allegations of misconduct against one of APA's officers were discussed. He also contended that at some of the meetings in question, matters were discussed pertaining to the union constitution. However, he did not say why the minutes would not suffice for the purpose of verifying that the union was doing what it claimed to be doing in its LM Reports to the Secretary of Labor.

The union's answer asserted as an affirmative defense that the plaintiff had not stated a claim upon which relief could be granted. Later, the union moved for dismissal on the same ground. The district court denied the motion.[5] Three months later, plaintiff was given leave to amend his

---

organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings; *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

[5]Defendants have never filed a motion for summary judgment. Although the plaintiff now characterizes Judge Mahon's order denying defendants' motion to dismiss as a denial of summary judgment, by the order's terms it addressed only the defendants' motion for dismissal for failure to state a claim. Judge Mahon's order states that Judge Mahon reviewed the pleadings, the briefs, and the motions of the parties. Thus, we presume that he did not consider matters outside the pleadings which might be admissible as evidence at trial. Hence, the motion to dismiss was not

complaint, which he did by adding a claim under 29 U.S.C. § 411.

After the district court issued the order denying the motion to dismiss, the case was transferred from Judge Mahon to Judge McBryde. On Sept. 4, 1991, approximately two years after plaintiff had filed suit, a pretrial conference was held before Judge McBryde. At the close of the pretrial conference, Judge McBryde stated his intention to "withdraw" Judge Mahon's denial of the union's earlier motion to dismiss the original complaint, and to grant that motion. Later that same day, Judge McBryde dismissed plaintiff's entire amended complaint. Judge McBryde's order did not say whether the dismissal was with prejudice.

The plaintiff requested the court to vacate or reconsider the order dismissing the amended complaint. The plaintiff characterized the order as one granting summary judgment, and claimed that the order was in error for failure to comply with Fed.R.Civ.P. 56, which requires ten days notice and an opportunity to respond prior to the grant of summary judgment for an opposing party.

On Nov. 15, 1991, Judge McBryde issued an order in response to plaintiff's motion to vacate or reconsider. Judge McBryde made it clear that:

> Contrary to plaintiff's contentions, the dismissal of his claims was not the result of the court's granting summary judgment in favor of defendants. Rather, plaintiff's amended complaint was dismissed because plaintiff failed to state a claim and, given the opportunity at the pretrial conference, plaintiff was unable to articulate a claim upon which relief could be based.

Plaintiff appeals, contending that he stated a claim under sections 411 and 431(c) of the LMRDA, and was improperly denied notice and an opportunity to respond to what he characterizes as the court's *sua sponte* entry of summary judgment for defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291.[6]

## DISCUSSION

### I. WHETHER JUDGE MCBRYDE'S ORDER AMOUNTED TO SUMMARY JUDGMENT, TRIGGERING THE REQUIREMENTS FOR NOTICE AND AN OPPORTUNITY TO RESPOND UNDER FED.R.CIV.P. 56

---

converted into a motion for summary judgment under Fed.R.Civ.P. 12(b)(6).

[6]Although the district judge did not explicitly state whether the dismissal of plaintiff's complaint was with prejudice, we find that it was, and hence we have jurisdiction under 28 U.S.C. § 1291.

At the pretrial conference, Judge McBryde stated that he was "withdrawing" the order in which Judge Mahon had denied defendants' motion to dismiss the original complaint. Judge McBryde then stated that he was granting the motion to dismiss. The same day, he issued an order dismissing plaintiff's amended complaint. The parties dispute whether Judge McBryde's order was in effect a summary judgment for defendants, due to Judge McBryde's alleged consideration of matters outside the pleadings.[7] In his order dated Nov. 15, 1991, Judge McBryde explicitly denied that he had granted summary judgment for defendants. In effect he simply reversed the court's earlier decision that the complaint stated a cause of action. He did not explicitly deny considering matters outside the pleadings, but in denying that he had granted summary judgment, he implicitly denied considering matters outside the pleadings. *See, e.g., Ware v. Associated Milk Producers, Inc.,* 614 F.2d 413, 414-15 (5th Cir.1980) (appellate court accepted on face value "the express wording of the Order of Dismissal [which] affirmatively indicates that the district court did not consider the extra-pleading matters"); *Ellis v. Cassidy,* 625 F.2d 227 (9th Cir.1980) (appellate court must give credence to district court's statement that it did not consider matters outside the pleadings). *See generally* 2A Moore's *Federal Practice* para. 12.09[3] at 12-77 (n. 5) (2d ed. 1991) (collecting cases). Only if it appears that the district court *did* rely on matters outside the pleadings should an appellate court treat the dismissal as a summary judgment. *See United States v. East Baton Rouge Parish School Board,* 594 F.2d 56 n. 3 (5th Cir.1979) (citing *Moch v. East Baton Rouge Parish Sch. Bd.,* 548 F.2d 594

---

[7]Ordinarily, when matters outside the pleadings are considered, a motion for dismissal based on failure to state a claim is converted into a motion for summary judgment (*see* Fed.R.Civ.P. 12(b)(6)), which is disposed of as required by Fed.R.Civ.P. 56. Even when granted *sua sponte,* summary judgment is governed by Rule 56's requirement of ten days notice and an opportunity to respond. *See, e.g., Powell v. United States,* 849 F.2d 1576, 1577 (5th Cir.1988) (on scheduled trial date, district court judge first gave notice that he contemplated entering summary judgment, and did so *sua sponte* just hours later; summary judgment was reversed by Fifth Circuit "[b]ecause settled precedent in this circuit bars entry of summary judgment without the ten days notice mandated by Fed.R.Civ.P. 56(c)"). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Ware v. Associated Milk Producers,* 614 F.2d 413, 414 (5th Cir.1980); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 444-45 (5th Cir.1991); *Herron v. Beck,* 693 F.2d 125, 127 (11th Cir.1982); *McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir.1991); *Estate of Smith v. Tarrant County Hosp. Dist.,* 691 F.2d 207, 208-09 (5th Cir.1982); *Capital Films Corp. v. Charles Fries Products, Inc.,* 628 F.2d 387, 391-92 (5th Cir.1980); *NL Industries v. GHR Energy Corp.,* 940 F.2d 957, 965-66 (5th Cir.1991); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556 (3d Cir.1980).

(5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 183, 54 L.Ed.2d 132 (1977). *See generally* 2A Moore's *Federal Practice* para. 12.09[3] 12-82 (n. 10) to 12-83 (2d ed. 1991). Thus, the Rule 56 requirements for an additional ten days notice and an opportunity to respond did not come into play.

The fact that plaintiff arrived at the pretrial conference without any reason to think that the motion to dismiss the § 431(c) claim would be revived and reconsidered is immaterial, for he previously had notice and an opportunity to respond to that motion. Plaintiff claims that even if there was no summary judgment in this case, he should have been given notice and an opportunity to respond to Judge McBryde's intention of revisiting the question whether plaintiff had failed to state a claim upon which relief could be granted under § 431(c). We do not agree. Plaintiff had notice and an opportunity to respond, and did respond, when defendants initially filed their motion for dismissal based on plaintiff's failure to state a claim. He was not entitled to fresh notice and an opportunity to reargue his position, despite the fact that the case was transferred from one judge to another. Judge McBryde was fully capable of reviewing the motions and briefs filed in connection with the initial motion to dismiss, and presumably also had access to a transcript or audiotape of the hearing on the motion to dismiss. That being so, Judge McBryde, like Judge Mahon before him, was in a position to consider the best arguments plaintiff could muster once given notice that his § 431(c) claim was in jeopardy. The revisitation by the court of its earlier order denying the motion to dismiss was not error, both because plaintiff had ample opportunity to respond to that motion and because a court may correct its own errors. The fact that Judge McBryde was not correcting his own error, but that of another judge who initially had been in charge of the case, is of no moment. *See generally* 1B Moore's *Federal Practice* para. 0.404 [4.-2] at 127 (2d ed. 1992) (collecting cases) ("There is no jurisdictional inhibition to reconsideration [of nonfinal judgments] ... [A] trial judge should not court reversal because of an erroneous ruling of another judge anymore than because of an erroneous ruling of his own.... [T]ransfer should no more freeze prior rulings than it should require their routine reexamination"). The general rule is:

> A judge should hesitate to undo his own work.... Still more should he hesitate to undo the work of another judge.... But until final judgment or decree there is no lack of power, and occasionally the power may be properly exercised.

*Peterson v. Hopson,* 306 Mass. 597, 603, 29 N.E.2d 140 (1940).[8]

## II. A.  DISMISSAL OF PLAINTIFF'S § 431(C) CLAIM;  "JUST CAUSE" AS FUNDAMENTAL ELEMENT OF A CAUSE OF ACTION UNDER § 431(c)

We review *de novo* the district court's dismissal of a complaint for failure to state a claim.[9] When considering a motion to dismiss for failure to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985) (citations omitted).  However, conclusory allegations or legal conclusions

---

[8]There is a question as to the effect of the dismissal of plaintiff's § 431(c) claim.  A dismissal which is designated "with prejudice" is "normally an adjudication on the merits for purposes of res judicata."  1B Moore's *Federal Practice* para. 0.409 [1.-2] at 316 (2d ed. 1992).  Though Judge McBryde explicitly stated that his order was not a grant of summary judgment for defendants, he did not state whether the dismissal for failure to state a claim was intended to be "with prejudice" (i.e., on the merits, and therefore having res judicata effect).  We think it was.  At the pretrial conference, Judge McBryde denied plaintiff's request to amend his complaint again, because it appeared that under no facts would his claim be cognizable.  Moreover, it is well established that a dismissal is presumed to be with prejudice unless the order explicitly states otherwise.  *See, e.g., Federated Dep't Stores v. Moitie,* 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981);  *Weissinger v. United States,* 423 F.2d 795, 798 n. 4 (5th Cir.1970) (en banc); *Lambert v. Conrad,* 536 F.2d 1183 (7th Cir.1976).  This is not to say that a dismissal with prejudice must always be upheld.  *See Tuley v. Heyd,* 482 F.2d 590 (5th Cir.1973) (error to dismiss pro se complaint with prejudice;  proper result would have been dismissal without prejudice).  However, where it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), the court's decision to dismiss the claim with prejudice should be upheld.

> When, as in the instant case, leave to amend has been sought and denied:
>
> Plaintiff has the burden of either pursuading [sic] the court to designate the dismissal as "without prejudice," or of appealing.  Otherwise a dismissal for failure to state a claim is res judicata "as to the existing claim which it appears plaintiff was attempting to state"....  [I]f plaintiff seeks to file an amended complaint, and leave is denied with prejudice, the denial is res judicata as to any claim in the proposed amended complaint....  But the bar does not extend beyond the claim or cause of action that was pleaded in the complaint.  It does not preclude a new suit on different factual allegations that call into play different legal principles.

1B Moore's *Federal Practice* para. 0.409[1.-2] at 310 n. 13 (2d ed. 1992) (citations omitted).  The denial or grant of leave to amend a complaint is reviewed under the abuse of discretion standard.  *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971).  We cannot say that the district court's denial of leave to amend the complaint a second time was error.

[9]The dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is a question of law, and is not entitled to the same deference as determinations involving fact questions.

masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *See* 2A Moore's *Federal Practice* para. 12.07[2.-5] at 12-64 n. 6 (2d ed. 1991) (collecting cases). Unless it appears "beyond a doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed for failure to state a claim, and leave to amend should be liberally granted. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Despite this liberal standard, we find that plaintiff has failed to state a claim under § 431(c) which would be cognizable under any set of facts. This is because plaintiff has failed to demonstrate "just cause," an essential element of a claim under § 431(c). "Just cause" under § 431(c) refers to circumstances that would put a reasonable union member on notice that further investigation is warranted to assure that the union's LM filings with the Secretary of Labor (required under § 431) comport with the union's own records of its activities. Establishing "just cause" requires the union member to state what he wishes to verify in the LM Reports and how the particular union records he is requesting are expected to assist him in doing so. *See, e.g., Local No. 1419, ILA, General Longshore Workers Union, AFL-CIO v. Smith,* 301 F.2d 791 (5th Cir.1962); *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334,* 574 F.2d 484 (9th Cir.1978); *Mallick v. International Brotherhood of Electrical Workers, et al.,* 749 F.2d 771 (D.C.Cir.1984); *Daniels v. National Post Office Mail Handlers,* 454 F.Supp. 336 (E.D.Va.1978); *McGinnis v. Local Union No. 710, International Brotherhood of Teamsters,* 664 F.Supp. 1212 (N.D.Ill.1987).[10]

There are many cases affirming a union member's right to inspect and photocopy receipts and other union records necessary to verify the accuracy of the union's financial statements filed with the Secretary of Labor as required by § 431. *See, e.g., Conley v. United Steelworkers of America, et al.,*

---

[10]Obviously, it may sometimes be difficult for a union member to *know* whether the federal filings contain discrepancies until he has seen the union's records. That is why the "just cause" standard has been interpreted by courts to be rather "minimal," *see, e.g., Fruit and Vegetable Packers & Warehousemen Local 760 et al. v. Morley,* 378 F.2d 738 (9th Cir.1967). The key is to strike a balance between the union member's need to know and the union's need to protect itself against needless harassment. The just cause rule accomplishes this balance. *See Conley v. United Steelworkers of America, et al.,* 549 F.2d 1122 (7th Cir.1977).

549 F.2d 1122 (7th Cir.1977); *McGinnis,* 664 F.Supp. 1212; *Moran v. Walsh,* 759 F.Supp. 1067 (S.D.N.Y.1991). The only case of which we are aware involving a union member's access to union records necessary to verify the union's constitution and bylaws is *Daniels v. National Post Office Mail Handlers,* 454 F.Supp. 336 (E.D.Va.1978). In *Daniels,* a member of a postal workers' union sought to compel release of minutes of meetings at which the union's constitution had been adopted. The postal worker brought claims under both sections 411 and 431, charging that the minutes were needed in order to ascertain that the constitution the union filed in its LM Report was the constitution the membership had voted to adopt. Although the court dismissed plaintiff's claims for lack of venue, the court noted that plaintiff had clearly demonstrated "just cause" under § 431:

> The Court has no question that plaintiff is entitled to have available to him the convention minutes which effected the adoption of the defendant's constitution.... Surely the minute books of the convention and of the Steering Committee are necessary to verify the validity of the adoption of the constitution, the nature of the debate and apparent intent of the membership, and the consistency of the constitution as published [and filed with the Secretary of Labor] to the constitution actually adopted by the membership.

454 F.Supp. at 338. *Daniels* is distinguishable from the instant case insofar as the postal worker in *Daniels* was able to establish "just cause" by pointing to a particular portion of the union's LM Report which he sought to verify, and by alleging that he had reason to believe the LM Report inaccurately represented the choice of constitution made by the membership.

Plaintiff's complaint states that he seeks access to audiotapes or transcripts of certain union meetings in order to verify the constitution and bylaws filed by the union with the Secretary of Labor. However, plaintiff has failed to demonstrate any reasonable basis for suspicion that the union's federal filings might not comport with the union's records and activities. Plaintiff's complaint boils down to the fact that the minutes do not provide a word-for-word record of what transpires at meetings.[11]

---

[11]At the pretrial conference, plaintiff's attorney summed up the complaint as follows: "[Plaintiff] is a dues-paying APA member, and he is a very politically active member who has been involved in supporting candidates and speaking at union meetings, and it is his contention that he, as a member, and other members cannot glean an intelligent understanding of what is said at the meetings unless they are able to procure copies of the tapes or transcripts of the meetings." In his brief, plaintiff claims: "While § 431 may not require APA or any other union to tape record its meetings or to record the meetings in any particular manner, the fact is that the APA has chosen to tape record the meetings for at least the past seventeen years. Once a union has chosen a method to record its meetings the union members are entitled to access to the records for recording those meetings. There can be no argument that APA members cannot find out what

The LMRDA does not require the union to audiotape its meetings or to keep on file certified transcripts of meetings. Unions are required to keep materials on file which would assist in verifying their filings with the Secretary of Labor under 29 U.S.C. § 431. Some unions may keep on file more information than others, because the records required to be maintained are not specified in excruciating detail in § 431. If union records that are kept voluntarily by the union to facilitate its internal operations (and only tangentially relate to matters addressed in the LM Reports) are accessible as of right, as plaintiff would have us hold, unions might well be discouraged from keeping more than a bare minimum of information on file. That is why the requirement of "just cause," while "minimal," *see, e.g., Fruit and Vegetable Packers and Warehousemen Local 760 et al. v. Morley,* 378 F.2d 738, 744 (9th Cir.1967), demands the establishment of a direct connection between records sought to be accessed and the union's federal filings. If he is to survive a motion to dismiss for failure to state a claim, a plaintiff union member must make a showing of circumstances that would put a reasonable union member on notice of a possible discrepancy between the records required to be kept under §§ 431 and 436. The union member must specify *what* he is seeking to verify in the LM Reports, and how he believes the records he is requesting will assist him. Under § 431, union members must come forth with more than bare, conclusory allegations that the comparison of audiotapes and LM Reports might reflect a discrepancy between the union's actual activities and its reports to the Secretary of Labor.

All that plaintiff has alleged is that one of the meetings' minutes were so elliptical that the minutes did not adequately inform those members who chose not to attend what had transpired at the meeting, not that they demonstrate a discrepancy between the union's federal filings and its actual behavior. Put another way, the primary focus of plaintiff's complaint is to seek a comparison of the

_____

goes on at their board meetings unless they have reasonable access to listen to and make copies of the tapes of the meetings." In his reply brief, plaintiff quotes his own deposition testimony in order to "summarize the rationale of his request for the tapes and of this lawsuit." At that deposition, plaintiff stated: "After listening, after receiving inadequate minutes ... and after hearing controversial information ... on several subject matters and after listening to inadequate tapes provided to me by the Union, I concluded that all of these subject matters would be of great interest to me by means of transcript or by you giving me a copy of the tapes where I can enhance the tape and make it legible in sound to me." [Parenthetically, we note that Mr. Fernandez-Montes' statement appears to belie his claim that he has little facility with the English language.]

minutes with the audiotapes, rather than a comparison of the minutes or the audiotapes with the union's federal filings. As such, it fails to state a claim under § 431.

## B. DISMISSAL OF PLAINTIFF'S § 411 CLAIM; FAILURE TO PROVIDE MEANINGFUL NOTICE AND AN OPPORTUNITY TO RESPOND

At the pretrial conference, Judge McBryde stated his intention to "*withdraw*" Judge Mahon's order denying defendants' motion to dismiss—which *when made* challenged a complaint presenting a single claim under § 431(c). Judge McBryde said he would "grant" the defendants' motion to dismiss, which had been made prior to plaintiff's amendment of his complaint (adding a § 411 claim). No separate motion to dismiss was ever made specifically addressing the § 411 claim that was added to the complaint. Plaintiff argues that he should have had notice and an opportunity to respond to the court's stated intention of dismissing his § 411 claim,[12] when the dismissal would have res judicata effect. We do not address the question whether *sua sponte* dismissal with prejudice requires any notice, for even if that were the rule, the dismissal in the instant case would be harmless error. The just cause requirement of § 431(c) applies when information purportedly required to be disclosed under § 431 is sought to be disclosed under § 411. Plaintiff may not under § 411 obviate the pleading requirements of § 431(c).[13]

Plaintiff contended that APA's unwillingness to provide copies of tapes of meetings meant that he had an unduly onerous burden placed upon his *participation* as a union member. Although he is permitted to attend union meetings, he claims that he has difficulty with the English language and needs the audiotapes in order better to comprehend what is said at union meetings and to verify union reports required to be filed with the Secretary of Labor under § 431(c). Plaintiff relies heavily on *Daniels* for the proposition that:

> The right to express views [under § 411] in ignorance of facts is a hollow right.... [A] union can hardly be said to be affording a member the right [under § 411] to "express ... views,

---

[12]Although Judge McBryde did not refer specifically to the § 411 claim, he referred to the amended complaint. The original complaint had been amended by leave of Judge Mahon so that plaintiff could add his § 411 claim.

[13]Another possible barrier to plaintiff's claim under § 411 is that § 411(a)(4) requires a plaintiff to exhaust "reasonable hearing procedures" available within the union prior to seeking a remedy in the courts.

arguments, or opinions ... upon any business" of the union when a union deliberately and as a matter of policy keeps its members in ignorance.... A union may preclude a member from discussing union affairs by denying him access to information just as effectively as by silencing the member at a meeting or threatening a member with punishment after the fact for expressing his views.

454 F.Supp. at 339. However, language in the *Daniels* opinion indicates that the court did not consider § 411 to be a way around the just cause requirement of § 431(c), but instead that when a claim has been established under § 431(c) it *may* have been established under § 411 as well:

Congress could not have intended the limited remedy of § 431(c) to be the member's only remedy when the deprivation of information *also* amounts to a deprivation of § 411 rights.... [I]n a proper case, the denial of a union member's access to information which is required to be disclosed under 29 U.S.C. § 431(c) may *also* be a violation of the member's rights under 29 U.S.C. § 411(a).

*Id.* (emphasis added). We are aware of no decision holding that despite the failure to establish just cause under § 431(c), a union member may access union records in order to enhance his ability to participate in union affairs. To fashion such a remedy, even in cases in which a union member has difficulty with English, would be to expand § 411 far beyond the purpose for which it was intended by Congress.

While § 411 contains general language regarding the union member's "right to participate" in union affairs, subject only to "reasonable" limits imposed by the union, § 411(a)(1) has been interpreted by the Supreme Court as being "no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey,* 379 U.S. 134, 139, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964).[14] *See also Ackley v. Western Conference of Teamsters,* 958 F.2d 1463, 1473 (9th Cir.1992). We think the claim that plaintiff is discriminated against by the union because the union fails to accommodate his need for assistance in comprehending English in the particular manner upon which he insists stretches § 411 further than Congress intended. Although at least one circuit has construed very liberally the union member's "right to participate" under § 411, *see, e.g., Bunz v. Moving Picture Machine Operators' Protective Union,* 567 F.2d 1117 (D.C.Cir.1977), that same circuit has recognized that:

---

[14]We do not think that § 411(a)(2) is any broader than § 411(a)(1) when applied to the facts of this case.

[T]he Supreme Court has cautioned lower courts to be especially leery of interpreting the LMRDA based on uncertain inferences from word-by-word parsing of the statute. "We must look to the objectives Congress sought to achieve and avoid placing great emphasis upon close construction of the words." ... [T]he statutory right to freedom of speech.... simply does not guarantee access to all information a member might want to speak about."

*Mallick,* 749 F.2d at 776 (quoting *United Steelworkers v. Sadlowski,* 457 U.S. 102, 111, 102 S.Ct. 2339, 2345, 72 L.Ed.2d 707 (1982)). The statutory right to participate does not guarantee access to all union information about which a union member might wish to be made aware, to discuss with other union members, or to have an opportunity to study at his leisure.[15]

III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[15]We see no reason why Fernandez-Montes could not obtain the translation assistance of a fellow union member at union meetings. We express no view as to what claims or remedies might be available in a case involving a union member with an extensive disability making his participation in union affairs impossible absent a particular type of accommodation on the part of the union.