# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 23, 2008

Charles R. Fulbruge III
Clerk

No. 08-30523
Summary Calendar

KELVIN WELLS,

Plaintiff-Appellant,

v.

MUNIR ALI; MELVA CAVANAUGH; and TOM HANLON

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 06-400-JVP-DLD

Before HIGGINBOTHAM, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

On June 8, 2006, Plaintiff-Appellant Kelvin Wells ("Wells") filed suit against Defendants-Appellees Melva Cavanaugh ("Cavanaugh"), Munir Ali ("Ali"), and Tom Hanlon, Sr. ("Hanlon") in the United States District Court for the Middle District of Louisiana, alleging violations of his civil rights under 42 U.S.C. § 3601 et seq (the Fair Housing Act, or "FHA"), 42 U.S.C. § 1983, and parallel state law in connection with Ali's eviction action against Wells. Cavanaugh and Hanlon moved for dismissal, and Ali moved for summary

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

judgment.   United States District Judge John V. Parker dismissed with prejudice the claims against Cavanaugh on March 29, 2007, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and dismissed Hanlon from the suit without prejudice on October 26, 2007, pursuant to Rule 4(m), on the grounds that Wells failed to serve him properly.   Wells appealed, but at that time, no judgment had yet been rendered below on one of his claims (the one against Ali), so we dismissed all claims without prejudice for lack of jurisdiction. See Wells v. Ali, No. 07-31059, slip op. (5th Cir. Jan. 8, 2008) (citing Thompson v. Betts, 754 F.2d 1243, 1245 (5th Cir. 1985)).   The district court granted summary judgment in Ali's favor on May 13, 2008.   Wells now appeals.

In substance, Wells's pleadings contend that defendants racially discriminated against him in violation of the above-mentioned federal statutes. Wells failed to brief his state-law claims; accordingly, they are waived.[**]  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998).  We affirm the judgments of the district court in their entirety.

## I. Wells's Claims against Cavanaugh

Wells claimed that Cavanaugh, a Justice of the Peace in East Baton Rouge Parish in Louisiana,  violated his rights under § 1983 and the FHA in connection with his eviction.   Specifically, Wells's complaint alleges that Cavanaugh "had plaintiff evicted" and "is still holding monies" related to those eviction proceedings.   In addition, his brief claims she called Wells, who is African-American, a repugnant racial epithet and "attack[ed] him [and] snatch[ed] [sic] the door as he was leaving [her office] during her tirade."  Wells's claims against Cavanaugh were dismissed for lack of subject matter jurisdiction, failure to state

---

[**] Even if Wells's brief were understood to appeal the adverse judgments on his parallel state-law claims, the same immunity doctrines, defects in subject matter jurisdiction and service of process, and factual insufficiencies that bedeviled Wells below, see infra, would require dismissal of those state claims in this court as well.

a claim upon which relief can be granted, and on the basis of judicial and Eleventh Amendment immunity.

We review dismissals under Rules 12(b)(1) and 12(b)(6) de novo, and according to the same standard. Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993); Benton v. United States, 960 F.2d 19, 21 (5th Cir. 1992). That standard requires us to take the factual allegations of the complaint as true and resolve ambiguities in the plaintiff's favor. Benton, 960 F.2d at 21. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," however. Fernandez-Montes, 987 F.2d at 284. We construe pro se litigants' pleadings liberally, Howard v. King, 707 F.2d 215, 220 (5th Cir. 1983), but pro se litigants are not exempt from compliance with the relevant rules of procedure and substantive law, Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981).

A. Judicial Immunity

Even taking Wells's bare, unsupported allegations against Cavanaugh as true, his suit against her would be barred. Judges enjoy absolute immunity from suit for acts undertaken in their judicial capacity. Mireles v. Waco, 502 U.S. 9, 10 (1991) (finding judicial immunity to be absolute and "not overcome by allegations of bad faith or malice" or corruption). Because Wells alleges conduct in connection with Cavanaugh's official acts, his claims trigger judicial immunity. The Supreme Court has explained that two limited exceptions to this doctrine exist: acts the judge takes in a non-judicial capacity, and "actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 11–12. Neither exception applies here.

According to Wells's pleadings, Cavanaugh (1) ordered him evicted and held money relating to the eviction proceeding, and (2) slammed shut the door to her chambers and hurled a racist epithet at him while ordering him out of her chambers. The first pair of Cavanaugh's actions appear to have been a plain exercise of Cavanaugh's judicial authority. Although he claims her acts

exceeded her jurisdiction (he does not specify which acts, but we will consider him to have alleged that all did), Wells offers no legal support whatsoever for that claim.

The district court properly found that the second pair also constituted official acts because they allegedly arose out of Wells's visit to Cavanaugh's official chambers. As a result, the repugnant nature of the word Wells claims Cavanaugh used and her alleged slamming of the door would not strip her of judicial immunity, as Wells claims both acts occurred in the course of his visit to the judge's chambers about his case before her, and arose from that visit. They therefore satisfy this circuit's four-part judicial immunity test. See Ammons v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983). This is so even though the use of a racial epithet by a sitting judge would be outrageous and an insult to both a litigant and the judge's own office. In addition, although threats of physical force by a judge do not constitute a normal judicial function entitled to immunity, slamming a door falls far short of such a threat. See, e.g., id. at 1448 (affirming dismissal of § 1983 action because plaintiff failed to allege the judge placed him "in fear of imminent harm, or that [the judge] took any actions indicating an immediate intent to carry out the alleged threats").

Wells's citation to Hafer v. Melo, 502 U.S. 21, 31 (1991) for the proposition that Cavanaugh may be sued notwithstanding the Eleventh Amendment's grant of immunity is inapposite. Hafer states that, in contrast to the executive officers whose Eleventh Amendment immunity Congress abrogated in some circumstances under § 1983 (pursuant to § 5 of the Fourteenth Amendment), "judges carrying out their judicial functions" enjoy "absolute immunity . . . for their official actions." Id. at 29.

B. Other Mandatory Grounds for Dismissal

Even if judicial immunity did not require dismissal, however, this court would have no choice but to dismiss Well's attempt to relitigate his eviction-related claims in federal court under the Rooker-Feldman doctrine, and all

claims against her on grounds of Eleventh Amendment sovereign immunity, for reasons explained in the Magistrate Judge's thorough report of December 6, 2006, which the district court adopted. See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005) (holding that federal district courts are barred by the Rooker-Feldman doctrine from hearing cases, like Wells's, that are "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments") (applying District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelty Trust, 263 U.S. 413 (1923)); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that a suit against a state official acting in her official capacity constitutes a suit against the state and is therefore barred by the Eleventh Amendment, even if brought pursuant to § 1983).

For these reasons, the district court was correct to dismiss all claims against Cavanaugh.

## II. Wells's Claims against Hanlon

The district court dismissed all claims against Hanlon because he was not properly served. Although Wells claims this dismissal was erroneous because "Federal Marshals did not complete [their] mission when their orders were to serve Tom Hanlon," and because "they [presumably the district court] ha[d] an affidavit confirming service" on Hanlon, these claims are unavailing. A review of Rule 4 of the Federal Rules of Civil Procedure, which prescribes the procedure for properly serving a defendant with process, reveals that the district court had no choice but to reach this result. The requirements of Rule 4 are phrased in plainly mandatory language. To comply, the plaintiff must ensure that the summons be signed by the clerk of the court and bear the court's seal (Rule 4(a)(1)(F-G)); state the time within which the defendant must appear and defend the allegations (Rule 4(a)(1)(D)); and name the court and the parties (Rule 4(a)(1)(A)). Although, as Wells contends, he satisfied some of the other

conditions of service of process, he failed to satisfy these requirements. He complains of insufficient help from the U.S. Marshals, but the ultimate obligation to comply with Rule 4 lies with him, not the Marshals. Therefore the district court's dismissal of all claims against Hanlon was correct.

### III. Wells's Claims against Ali

Wells's claims against Ali were dismissed by summary judgment. Ali, like Wells, proceeds pro se. We will treat Ali's papers, titled "Appellee's Brief and Motion to Dismiss the Case," as a response to Wells's appeal of the grant of summary judgment.

The court "review[s] grants of summary judgment de novo, applying the same legal standard used by the district court." Chacko v. Sabre, Inc., 473 F.3d 604, 609 (5th Cir. 2006). Summary judgment is proper "if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "After adequate time for discovery and upon motion," summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). The moving party "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. at 1075.

Wells claims Ali discriminated against him because of his race and disability in the provision of housing, in violation of the FHA. The evidence offered below revealed the following. Wells rented an apartment from Ali in Baton Rouge, Louisiana, first by written lease (from January 11, 2005 until June

30, 2005) and then on a month-to-month basis. The lease stipulated that Wells would have two parking places on the premises. After the lease was signed, Wells began parking three vehicles there. In addition, Wells requested at some point that Ali make repairs to Wells's apartment (specifically, that he arrange for mold to be removed), which Ali appears to have done but not to Wells's satisfaction. Wells failed to pay his September 2005 rent on time and failed to pay an assessed late fee. Ali notified Wells in writing that he was not renewing his lease, and gave him a 30-day Notice to Vacate by November 1, 2005. The reasons given were Wells's violation of the lease's provision regarding the number of parking places and his non-payment of the late fee. Wells responded that he would not remove the third vehicle under any circumstances. He also claimed that Ali had made disparaging comments to him about his disability (namely, that he did not look disabled) and had called him by the same racial epithet as Cavanaugh.

On November 4, 2005, Ali filed a Petition of Eviction and Order; ten days later, a judgment of eviction was granted, though it was later reversed. Wells also filed an FHA complaint with the Department of Housing and Urban Development ("HUD") on June 14, 2006. After conducting an investigation, HUD issued a "Determination of No Reasonable Cause" letter, notifying Wells that the agency had no reasonable cause to believe that a discriminatory housing practice had occurred.[***] HUD found that between June 2005 and June 2007, Ali had thirteen tenants, all African-American, of whom eight were evicted for non-payment of rent, four voluntarily moved out, and one failed to sign the lease. In addition, at the time of HUD's report, Ali was renting to three individuals; all were African-American, all were disabled, and all paid their rents on time. HUD further found that there were no disinterested witnesses to the events of which Wells had complained. On these facts, the district court found that Wells had

---

[***]Although this court is not reviewing HUD's decision here, this letter is part of the record.

failed to offer evidence of a genuine issue of material fact on his FHA claim against Ali sufficient to withstand summary judgment.  We agree.

## CONCLUSION

For the reasons stated above, the judgments of the district court are AFFIRMED.